UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                         **DECISION AND ORDER**

v.

                                                                          11-CR-00381(A)(M)

VICTOR MARSHALL, et al.,

_____

       This case was referred to me by Hon. Richard J. Arcara, in accordance with 28 U.S.C. §636(b), for supervision of all pretrial matters [5].[1] Before me is the government's motion for an order authorizing the taking of a DNA sample from all defendants through the use of buccal swabs [36]. Oral argument was held on May 16, 2012 [62]. For the following reasons, the government's motion is denied, without prejudice.

## BACKGROUND

       The five defendants are charged in differing counts of an eleven-count Indictment with various narcotics related crimes. Indictment [1]. All defendants, other than defendant Besari Torres, are charged with possession of firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1). Id., Count 10. According to the government, two firearms, consisting of a Russian SKS semi-automatic rifle and a Sturm Ruger, were seized on November 22, 2011 from 1660 Kensington Avenue, Buffalo, New York, while defendants Victor Marshall, Alexy Diaz, Gerry Spencer and Mario Pena were present. Defendants' Memorandum of Law [37], pp. 2-3. A third firearm (Remington Arms Model 870 shotgun) was seized from 62 Schmarbeck, Buffalo, New York, "a residence associated with Victor Marshall". Id., p. 2.

---

    [1]      Bracketed references are to the CM/ECF docket entries.

These firearms have been submitted to the Erie County Central Police Services Laboratory ("Police Lab") for testing, which has revealed that the Russian SKS semi-automatic rifle contains "a mixture of DNA from at least five . . . unknown individuals" (Tripi Affidavit [36], ¶12), that the Sturm Ruger contains "a mixture of DNA from at leave four . . . unknown individuals" (id., ¶13), and that the Remington shotgun contained "DNA from as leave four . . . unknown individuals, including at least one male and one female individual" (id., ¶14). The government alleges that "known buccal samples are required for further comparison because the mixture profile [for each firearm] is not suitable for entry into the CODIS databank." Id., ¶¶12-14.

The government moves under the All Writs Act, 28 U.S.C. § 1651, as well as this Court's inherent authority, for an order authorizing it to obtain DNA samples from the defendants by use of buccal swabs. Defendants' Memorandum of Law [37], p. 10. Defendants oppose the motion,[2] arguing that the government is using the wrong standard for determining whether its motion should be granted (defendant Spencer's Memorandum of Law [53], pp. 3-5), that the government has failed to provide sufficient factual support for its motion (id., pp. 6-11), that even if the government has made a sufficient showing, the intrusion is unreasonable under the Fourth Amendment (id., pp. 12-14), and that the government cannot rely on the All Writs Act because it could have subpoenaed the buccal swabs during the grand jury investigation (id., pp. 14-15).

---

[2] Although defendant Spencer is the only defendant that submitted any opposition to the government's motion, the co-defendants orally joined in his opposition at the oral argument without objection from the government.

ANALYSIS

The government argues that "[t]o obtain buccal swabs for a DNA sample from a defendant who is in pretrial detention, the Court must find reasonable individualized suspicion that probative evidence will be found." Government's Reply Memorandum of Law [59], p. 2 (*citing* United States v. Owens, 2006 WL 3725547, *17 (W.D.N.Y. 2006) (Arcara, J./Foschio, M.J.)).[3] Since defendants Marshall, Spencer, Diaz and Pena are in pretrial detention, the Government also argues that their "legitimate expectation of privacy, including bodily privacy, is diminished" (id. at p. 3 *citing* Owens, 2006 WL 3725547 at *14-15). By contrast, defendants argue that the government must establish "much more" than probable cause by a "'clear indication that evidence of a crime with be found by the requested intrusion.'" Defendant Spencer's Memorandum of Law [53], p. 3 (*quoting* United States v. Goodridge, 945 F. Supp. 371, 373 (D. Mass. 1996)).

"Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant [and] . . . the showing of probable cause required by the Warrant Clause." Vernonia School District 47J v. Acton, 515 U.S. 646, 653 (1995). Nevertheless, "under certain circumstances, searches and seizures may be permissible under the Fourth Amendment 'based on suspicions that, although 'reasonable,' do not rise to the level of probable cause.'" In re Shabazz, 200 F. Supp. 2d 578, 583 (D.S.C. 2002) (*quoting* New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)). *See* Owens, 2006 WL 3725547 at *15 ("individualized suspicion that does not rise to probable

---

[3] Although Owens was initially cited by the government in its reply ([59]), defendants did not raise any objection to this at oral argument.

cause can justify a search in circumstances presenting less substantial privacy interests when balanced against the public interest in conducting such searches").

I acknowledge the contrary authority cited by defendants. Defendant Spencer's Memorandum of Law [53], pp. 3-5 (*citing cases, including* United States v. Nicolosi, 885 F. Supp. 50, 55-56 (E.D.N.Y. 1995) (requiring a showing of probable cause to compel a saliva sample)). However, Judge Arcara has previously determined that a DNA sample of an incarcerated individual may be obtained by the use of a buccal swab based upon reasonable individualized suspicion. *See* Owens, 2006 WL 3725547 at *17. *See also* Shabazz, 200 F. Supp. 2d at 584-85 ("although a showing of probable cause is not necessary, . . . requiring a saliva swab must be based on reasonable individualized suspicion").

In support of this showing, the government argues that the Indictment charging defendants with possession of firearms, "establish[ ] a reasonable individualized suspicion to believe that some of the DNA found on the guns are the defendants' DNA." Government's Reply Memorandum of Law [59], p. 3.[4] Defendants respond that "probable cause as to the commission of the crimes does not make it likely that any particular defendant personally touched any weapon leaving epithelial cells or saliva or blood or other biological material on any handgun". Defendant Spencer's Memorandum of Law [53], p. 7.

---

[4] At oral argument, the government represented that the three firearms that have been examined by the Police Lab for DNA were among the evidence presented to the Grand Jury in support of Count 10 of the Indictment, charging defendants Marshall, Spencer, Diaz and Pena with violating 18 U.S.C. §924(c)(1).

I agree with defendants that the return of an indictment in and of itself does not establish the government's entitlement to compel a DNA sample.[5] Nevertheless, to the extent the grand jury has found probable cause that the defendants Marshall, Spencer, Diaz and Pena possessed firearms, I conclude that there is reasonable suspicion to believe that their DNA will be located on these firearms. See United States v. Lassiter, 607 F.Supp.2d 162, 166 (D.D.C. 2009) (the government must establish "probable cause to believe that [the defendant's] DNA may match that found in the white tube sock recovered [from the crime scene]").

However, this is not the end of the inquiry. Drawing on the government's statement that "[t]he DNA mixture profile is not suitable for entry into CODIS", defendants argue that "[i]t appears that the DNA mixture profiles are not even of sufficient quality or resolution to . . . reliably discern discreet contributors to the mixture." Defendant Spencer's Memorandum of Law [53], pp. 8-9. They argue that "the conclusory assertions by government counsel - who does not claim to be an expert in DNA profiling - about the need or benefit of obtaining DNA samples are entirely unsupported." Id., p. 8. I agree with defendants.

Without evidence that the DNA samples recovered from the firearms are of a sufficient quality to be used for comparison purposes with the DNA the government seeks to obtain from the defendants, there is nothing to suggest that compelling defendants' DNA will lead to probative evidence in this case. The government has inexplicably failed to submit an affidavit from a qualified individual addressing this issue in its reply or to offer any explanation for why the samples would not be suitable for entry into CODIS, yet be sufficient to permit the

---

[5] *Compare with* Shabazz, 200 F. Supp. 2d at 584-85 ("requiring a saliva swab must be based on reasonable individualized suspicion that Petitioner was engaged in criminal wrongdoing").

Police Lab to determine whether the samples are a match to the DNA the government seeks to compel from the defendants.

Furthermore, unlike the other defendants, defendant Torres is not charged with the possession of firearms and is not in pretrial detention. Relying on defendant Torres being charged with participation in the drug conspiracy and the recovery of DNA from the Remington shotgun belonging to at least one unknown female, the government argues that "there is probable cause to believe [her] DNA may be found on the firearm". Government's Reply Memorandum of Law [59], p. 3 n.2. I disagree with the government.

I need not address whether the fact that defendant Torres is not in pretrial detention requires the government to make a higher evidentiary showing in support of its motion (which the government appears to concede) since even under the more lenient reasonable suspicion standard, it has not met its burden. Had defendant Torres' involvement in the conspiracy extended to possessing firearms in furtherance of drug trafficking, I would have expected her to be named in that count of the Indictment. Thus, based on the record before me, it is mere supposition that her DNA would be located on the firearms.

Moreover, the government has not established reasonable individualized suspicion to compel the DNA samples for any other purpose. While the thrust of the government's motion is directed to obtaining evidence linking defendants to the firearms, it also suggests that it is seeking defendants' DNA to link them to the narcotics and to other crimes. Government's Memorandum of Law [37], p. 9. However, there is no indication that DNA was recovered from the narcotics in this case or that there is DNA evidence in other crimes linked to these defendants. Thus, for these purposes the government has likewise not establish

"reasonable individualized suspicion that probative evidence will be found" from defendants' DNA. Therefore, I order that the government's motion be denied, without prejudice.[6]

## CONCLUSION

For these reasons, the government's motion [36] is denied, without prejudice.

**SO ORDERED.**

DATED: July 19, 2012

                                              /s/ Jeremiah J. McCarthy
                                              JEREMIAH J. MCCARTHY
                                              United States Magistrate Judge

---

[6] For the parties' benefit, I reject defendants' remaining arguments. Contrary to defendants' assertion (defendant Spencer's Memorandum of Law [53], pp. 12-14), the requested intrusion is not unreasonable under the Fourth Amendment. *See* Owens, 2006 WL 3725547 at * 16 ("the manner used by the agents in obtaining the swabs was reasonable under . . . the Fourth Amendment"). I likewise conclude that the government may rely on the All Writs Acts despite defendants' argument (defendant Spencer's Memorandum of Law [53], p. 15) that "the government's proper remedy here would have been to subpoena the defendants' saliva through a buccal swab during the grand jury investigation." *See* United States v. Li, 55 F.3d 325, 329 (7th Cir. 1995) (rejecting a similar argument; "the post-indictment nature of the order did not diminish the trial court's authority to issue the order. The district court had authority to require the handwriting exemplars").